IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAVIER FRANCISCO VILLANUEVA-RIOS, ABRAHAM NEFTALI GONZALEZ-ESPINO, and FREDERICK LEON GANT,<br><br>Defendants. | CRIMINAL ACTION FILE<br><br>NO. 1:20-CR-0073-MHC-CMS |

## ORDER

**I.   BACKGROUND**

Defendants Javier Francisco Villanueva-Rios ("J. Villanueva"), Abraham Neftali Gonzalez-Lopez ("Gonzalez"), and Frederick Leon Gant ("Gant") have been charged in a superseding indictment[1] with conspiracy to possess with the intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and

---

[1] Defendants originally were indicted on February 11, 2020, and the motions pending before the Court all were filed prior to the superseding indictment. A fourth defendant, Ricardo Villanueva-Rios, pleaded guilty to the conspiracy count and has been sentenced [Docs. 143-1, 173], and his previous motion to suppress was denied as moot [Docs. 82, 140].

846 (Count One – All Defendants); possession with the intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1) (Counts Two and Three – J. Villanueva; Counts Four and Five – J. Villanueva and Gonzalez; Count Six – All Defendants); possession of a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 924(c)(1)(A) (Count Seven – Gant; Count Ten – J. Villanueva); felon in possession of a firearm in violation of 21 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Eight – Gant); and money laundering in violation of 21 U.S.C. § 1956 (Count Eleven – J. Villanueva). First Superseding Indictment [Doc. 99].

All Defendants filed motions to suppress evidence that was captured from three phones pursuant to Title III[2] intercept orders [Docs. 80, 83, 86], and Gant filed motions to suppress evidence based upon a warrantless search of his vehicle [Docs. 84, 85]. On March 30, 2021, United States Magistrate Judge Catherine M. Salinas issued a Final Report and Recommendation recommending denial of the motions to suppress the evidence gathered in accordance with the Title III intercept orders ("R&R I") [Doc. 145] and, on March 31, 2021, Judge Salinas issued a Report and Recommendation recommending the denial of Gant's motion and

---

[2] References to "Title III" mean Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520.

amended motions to suppress evidence gathered from the warrantless search of his car ("R&R II") [Doc. 147].

The Orders for Service of R&R I [Doc. 146] and R&R II [Doc. 148] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. See also FED. R. CRIM. P. 59(a). After receiving extensions of time within which to file objections, Gonzalez and Gant filed their objections on April 27, 2021. Gonzalez's Objs. to the R&R ("Gonzalez's Objs.") [Doc. 160]; Gant's Objs. to the R&R ("Gant's Objs.") [Doc. 161]. J. Villanueva filed his objections on July 12, 2021. J. Villanueva's Objs. to the R&R ("J. Villanueva's Objs.") [Doc. 179].

## II.   STANDARD OF REVIEW

In reviewing a magistrate judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2012). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)) (internal quotation marks omitted). If there are no specific

3

objections to factual findings made by the magistrate judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59. Further, "the district court has broad discretion in reviewing a magistrate judge's report and recommendation"—it "does not abuse its discretion by considering an argument that was not presented to the magistrate judge" and "has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." Williams v. McNeil, 557 F.3d 1287, 1290-92 (11th Cir. 2009). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R to which Defendants object and has reviewed the remainder of the R&R for plain error. See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

### III. DISCUSSION

#### A. Motions to Suppress Wiretap Evidence

There were three applications for Title III intercept orders for phones referred to in the applications as Target Telephone #1, Target Telephone #2, and

4

Target Telephone #3 [Docs. 92 at 1-14, 92-2 at 1-16, and 92-4 at 1-17]. The details provided by the affiant to all three applications, Drug Enforcement Administration ("DEA") Task Force Officer Brandon Thompson, were described in detail by Judge Salinas in her R&R. R&R I at 2-11. The applications were all approved by United States District Judges [Docs. 92-1 at 1-12, 92-3 at 1-14, 92-5 at 1-14].

All three Defendants object to the finding of Judge Salinas that the Government satisfied the "necessity requirement" with respect to these particular wiretap applications.[3] J. Villanueva's Objs. at 1-2; Gonzalez's Objs. at 1-4; Gant's Objs. at 1-3. They contend that the undercover DEA agent had use of a confidential informant, was able to complete multiple drug purchases, and identified the targets' residences and vehicles, so that the wiretaps were unnecessary to aid in the investigation of the case.[4] Id.

The "[p]rocedure for interception of wire, oral, or electronic communications" contained in 18 U.S.C. § 2518 requires that "[e]ach application

---

[3] J. Villanueva moves to suppress the evidence collected from all three wiretap applications, while Gonzalez and Gant move to suppress the evidence obtained from the wiretap applications for Target Telephone #1 and Target Telephone #3, respectively. R&R I at 11 n.5.

[4] Defendants do not contest that the wiretaps were supported by probable cause.

5

for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter . . . include . . . a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c).

> In addition to being supported by probable cause, a wiretap application must satisfy the necessity requirement by including a "full and complete statement" describing other investigative techniques that have been tried and failed or explaining why such other techniques are unlikely to succeed. See 18 U.S.C. § 2518(1)(c), (3)(c). A wiretap affidavit need not "show a comprehensive exhaustion of all possible techniques" to satisfy the necessity requirement. United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986). Instead, it simply must show why "investigative techniques that reasonably suggest themselves" have failed or would fail. Id. Furthermore, the "partial success of alternative investigative measures" does not foreclose the use of a wiretap. United States v. Perez, 661 F.3d 568, 581-82 (11th Cir. 2001).

United States v. Goldstein, 989 F.3d 1178, 1195 (11th Cir. 2021). See also United States v. Hawkins, 934 F.3d 1251, 1258 (11th Cir. 2019) (quoting Perez, 661 F.3d at 581) (stating that § 2518 "does not 'foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted.'"); United States v. Vinales, 658 F. App'x 511, 520 (11th Cir. 2016) (citing United

6

States v. Cifarelli, 589 F.2d 180, 183 (5th Cir. 1979)[5]) ("The statute does not require that wiretaps be used as a last resort.").

In addition, even when the Government has sufficient evidence to prosecute an individual defendant based upon evidence gathered prior to a wiretap, "it 'is unrealistic to require the termination of an investigation before the entire scope of the [conspiracy] is uncovered and the identity of its participants learned.'" Perez, 661 F.3d at 582 (citing United States v. Hyde, 574 F.2d 856, 869 (5th Cir. 1978)); see also Goldstein, 989 F.3d at 1196. The Government's showing of necessity must be read in a "practical and commonsense fashion," and the district court is entitled to "broad discretion" in making its assessment of necessity. United States v. Alonso, 740 F.2d 862, 868 (11th Cir. 1984) (quotations and citations omitted).

This Court agrees with Judge Salinas that the affidavits in support of the three wiretaps described why previous techniques used by law enforcement were unable to identify all of the primary targets of the investigation and that, even if the techniques were sufficient to expose some of the criminal activities of the three Defendants in this case, "the Government nevertheless was authorized by statute to

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

7

apply for wiretap authorizations in pursuit of other targets and objectives." R&R I at 15. The Eleventh Circuit's recent decision in <u>Goldstein</u> rejects the same arguments made by Defendants in this case. In <u>Goldstein</u>, the defendants contended that the Government already had obtained enough information in its investigation based upon surveillance, phone records, and confidential sources to convict them, making the wiretap unnecessary. <u>Goldstein</u>, 989 F.3d at 1195. The Eleventh Circuit concluded:

> [T]he Government's showing of necessity was not defeated based on the mere possibility that the Government might have otherwise had enough evidence to sustain a conviction against Defendants . . . Again, the Government's stated objective in the investigation here was to identify all the co-conspirators involved in the market-manipulation scheme and to determine the full scope of the conspiracy. Taylor's affidavit shows that the wiretap was necessary to meet this objective. <u>See</u> <u>Perez</u>, 661 F.3d at 582 (holding that, while the Government had enough evidence to prosecute one defendant before the wiretap, it need not end the investigation before learning the full extent of the defendant's criminal activities and identifying his co-conspirators); <u>Hyde</u>, 574 F.2d at 869 (5th Cir. 1978) (affirming necessity of wiretap, noting that "[a]lthough the government has actual knowledge of a conspiracy and evidence sufficient to prosecute one of the conspirators, it is unrealistic to require the termination of an investigation before the entire scope of the [conspiracy] is uncovered and the identity of the participants learned" (quoting <u>United States v. Armocida</u>, 515 F.2d 29, 38 (3d Cir. 1975))).

<u>Goldstein</u>, 989 F.3d at 1195-96. Defendant's objections as to Judge Salinas's findings as to necessity are **OVERRULED**.

8

J. Villanueva also contends that the applications were not properly approved because the Attorney General authorized all Deputy Assistant Attorneys General and Acting Deputy Assistant Attorneys General, rather than naming specific individuals, to approve the Title III wiretaps. J. Villanueva Objs. at 2-3. However, 18 U.S.C. § 2516(1) does not prohibit special designation by job title:

> The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General or acting Deputy Assistant Attorney General in the Criminal Division or National Security Division specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications . . . .

18 U.S.C. § 2516(1).

In United States v. Giordano, 416 U.S. 505, 508 (1974), the Supreme Court rejected the authority of the Attorney General's Executive Assistant to authorize wiretap applications and held that "Congress did not intend the power to authorize wiretap applications to be exercised by any individuals other than the Attorney General or an Assistant Attorney General specially designated by him[.]" There is nothing in Giordano which requires the Attorney General to designate an individual's name as opposed to his or her title, so long as the person is "an Assistant Attorney General specially designated [by the Attorney General.]" In

this case, each wiretap application included an order from the Attorney General designating any Deputy Assistant Attorney General of the Criminal Division or Acting Deputy Assistant Attorney General of the Criminal Division to authorize applications for wiretap orders [Docs. 92 at 20, 92-2 at 22, 92-4 at 19]. And there is no dispute that either a Deputy Assistant Attorney General or Acting Deputy Assistant Attorney General authorized each wiretap application in this case [Docs. 92 at 18-19, 92-2 at 20-21, 92-4 at 21-22]. As Judge Salinas points out, other circuits which have considered this issue have ruled against the position urged by J. Villanueva. See R&R I at 24-25 (citations omitted). J. Villanueva's objection challenging the statutory authority of the Government to apply for the wiretap orders in this case is **OVERRULED**.

**B.     Motion to Suppress the Warrantless Search of Gant's Vehicle**

Prior to the search of Gant's vehicle, federal authorities learned the following:

- Controlled purchases of heroin were made by DEA from J. Villanueva and Gonzalez, with J. Villanueva driving a blue Nissan Sentra, between June and September 2019.

- DEA intercepts of J. Villanueva's telephone conversations revealed discussions between him and an unidentified make referred to as

10

"Big" in which J. Villanueva talked about providing a sample of drug product to "Big."

- DEA obtained an order to place a tracer on J. Villanueva's vehicle, which led them to a barber shop, a location referenced in wiretap conversations where the sample of the drug product would be held. Further discussions revealed that "Big" would purchase the drugs on October 26, 2019.

- DEA enlisted the help of Georgia State Patrol ("GSP") Troopers, including GSP Trooper Michael Bailey ("Bailey"), to assist in intercepting the unknown subject after the transaction was completed.

- J. Villanueva and Gonzalez arrived at the barber shop in the same blue Nissan Sentra previously surveilled by DEA agents. A man identified as Gant then arrived at the barber shop in a Nissan Rogue carrying a black backpack.

- The wiretap intercepted conversations indicating the arrival and departure of an individual from the barbershop. After Gant left the barber shop, DEA alerted GSP Troopers with a description of Gant's vehicle. Bailey was instructed to follow Gant's vehicle, establish probable cause, and pull Gant over.

11

R&R II at 1-6 (internal citations omitted).

Bailey pulled over Gant's Nissan Rogue, smelled a strong odor of freshly-sprayed air freshener, and saw a container of air freshener labeled "Blunt spray" in the cupholder. Id. at 7. As the air freshener started to dissipate, Bailey noticed a faint odor of marijuana emanating from the car and asked Gant to step outside the vehicle. Id. Gant refused Bailey's request to search the vehicle and another GSP Trooper arrived with his K-9 partner. Id. at 8. The dog alerted the troopers on the vehicle and Gant tried to run away. Id. The GSP Troopers grabbed Gant, forced him to the ground, and placed him in handcuffs. Id. Gant had a handgun on his person and he was secured and placed in the back of a patrol car. Id. A GSP Trooper searched the vehicle and found a backpack containing illegal narcotics, as well as a cell phone in the vehicle and a large amount of money on Gant's person. Id.

Judge Salinas found that the automobile exception justified the warrantless search of Gant's vehicle because the vehicle was mobile and probable cause to search the vehicle was established by the "collective knowledge" doctrine. R&R II at 10-14. Gant objects to the probable cause finding because he was not a subject of the investigation or identified as being involved in the drug activity prior to his

arrest, no one saw Gant after he entered the barber shop, and Bailey lied about his arrest of Gant.[6] Gant's Objs. at 3-4.

A warrantless search of an automobile is constitutional if (1) the automobile is readily mobile and (2) there is probable cause to believe that it contains contraband or evidence of a crime. United States v. Lanzon, 639 F.3d 1293, 1299-1300 (11th Cir. 2011) (citing United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003)). The first prong is satisfied if the car is operational, which is not contested here. Watts, 329 F.3d at 1286 (citation omitted). Regarding the second prong, probable cause exists when [u]nder the totality of the circumstances, there [i]s a fair probability that [contraband or] evidence of a crime will be found in [the] vehicle." Lanzon, 639 F.3d at 1300. "In deciding whether a search or seizure was justified, this Court may look to the collective knowledge of the law enforcement officials involved in an investigation 'if they maintained at least a minimal level of communication during their investigation.'" United States v. Andres, 960 F.3d

---

[6] Gant does not challenge the stop of Gant's vehicle by Bailey. The police "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see also Terry v. Ohio, 392 U.S. 1, 30-31 (1968). This includes the right to stop "a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." United States v. Hensley, 469 U.S. 221, 226 (1985).

1310, 1317 (11th Cir. 2020) (quoting United States v. Willis, 759 F.2d 1486, 1494 (11th Cir. 1985)). See also Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018) (quotation and citation omitted) ("Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed.").

This Court agrees with Judge Salinas that the collective knowledge of the agents involved in the DEA investigation, combined with the level of communication between Bailey and the DEA agents on the day of the search of Gant's vehicle, resulted in the existence of probable cause to believe Gant's car contained contraband.

> Here, Gant was caught in an ongoing DEA investigation when he visited the barber shop on October 26, 2019. The agents knew that the targets had planned to do a drug deal that night at the barber shop, and the agents observed Ricardo and Gonzalez go to the barber shop in the Nissan Sentra (a car that had been previously used to conduct the controlled purchases with the DEA's confidential informant) and meet with Gant. The agents observed only one other car at the barber shop that evening—Gant's. The intercepted text messages corroborate the movements of Ricardo and Gonzalez that evening and reflect the timing of the deal, which was consistent with Gant being present at that time. I conclude that the suspicious activities observed by law enforcement on the night of October 26, viewed in connection with the other information that the investigation had revealed concerning the transaction that Villanueva and Big had planned, was sufficient to establish probable cause to believe that Gant was involved in a drug

14

> transaction at the barber shop and had illegal drugs in his car at the time of the stop.
>
> With respect to Trooper Bailey's connection to the investigation, the undisputed evidence showed that he was an active part of the team, having been involved in the investigation for at least ten hours on the day that he pulled Gant over. Earlier that morning, TFO Waithe informed the GSP troopers (including both Troopers Bailey and Young) that an ongoing drug investigation revealed that there was likely to be a heroin transaction at some point that day, and that the DEA agents might need the GSP troopers to assist with apprehending the unknown subjects. Trooper Bailey was added to the WhatsApp chat around 10:00 a.m. that day. And, later that evening, after the agents observed Gant leave the barber shop, they advised Trooper Bailey of the description of Gant's vehicle and instructed him to make the stop. It is clear that Trooper Bailey had more than "a minimal level of communication" with the DEA agents throughout the day on October 26 prior to pulling over Gant's vehicle and searching the car.

R&R II at 12-13 (internal citations omitted).

To the extent that Defendant's objections call into question the Magistrate Judge's findings concerning the credibility of Bailey's testimony, "[i]n evaluating the factual version of events between the law enforcement officer[ ] and [the defendant], we should defer to the magistrate judge's determination unless his understanding of the facts appears to be 'unbelievable.'" United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (citing United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985)). The reasons given by the Magistrate Judge in finding Bailey's testimony to be credible are reasonable. See R&R at 5-8; see also United States v. Emanuel, 440 F. App'x 881, 883 (11th Cir. 2011) (according

15

"substantial deference" to the credibility determinations made by the magistrate judge where the defendant "failed to show that the magistrate [judge]'s understanding of the facts is not plausible or permissible . . . ."). This is not one of those "rare cases" in which the transcript of the evidentiary hearing presents an articulate basis for rejecting the Magistrate Judge's resolution of credibility. United States v. Marshall, 609 F.2d 152, 155 (5th Cir. 1980)[7]; see also United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) ("This is not the 'rare case' discussed in Marshall, as the transcript here provides no basis to reject the magistrate judge's credibility findings.").

Consequently, Gant's objections to the R&R's findings concerning the search of his vehicle are **OVERRULED**.

IV. **CONCLUSION**

Accordingly, after a *de novo* review of those portions of R&R I and R&R II to which Defendants object, the Court **OVERRULES** those objections [Docs. 160, 161, 179]. Finding no clear error in the remaining portions of the R&Rs, the Court **ADOPTS** the Final Report and Recommendation issued on March 30, 2021 [Doc.

---

[7] See n.5, *supra*.

145] and the Report and Recommendation issued on March 31, 2021 [Doc. 147] as the Opinions and Orders of the Court.

It is hereby **ORDERED** that the following motions are **DENIED**: Defendant Javier Villanueva-Rios's Motion to Suppress Title III Interceptions [Doc. 86]; Defendant Abraham Gonzalez-Espino's Motion to Suppress T-111 Interceptions [Doc. 80]; and Defendant Frederick Leon Gant's Motion to Suppress T-111 Interceptions [Doc. 83] and Motions to Suppress Evidence and Statements [Docs. 84, 85].

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendants as ready for trial on March 31, 2021, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendants' objections to the Report and Recommendation outweigh the right of the public and the right of the Defendant to a speedy trial, pursuant to 18 U.S.C. § 3161 et seq.

**IT IS SO ORDERED** this 10TH day of August, 2021.

MARK H. COHEN
United States District Judge

17